UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA M. S.

                                          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,           No. 5:23-CV-00374
                                                            (TJM/CFH)

                                          Defendant.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

Olinsky Law Group                       HOWARD D. OLINSKY, ESQ.
250 South Clinton Street – Suite 210
Syracuse, New York 13202
Attorney for plaintiff

Social Security Administration           SHANNON FISHEL, ESQ.
Office of the General Counsel
6401 Security Boulevard – 1520 Annex
Baltimore, Maryland 21235
Attorney for defendant

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Lisa M. S.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security

---

[1] This matter was referred to the undersigned for completion of a Report and Recommendation in accordance with General Order 18 and Local Rule 72.3(d). See Dkt. No. 4.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

income benefits. See Dkt. No. 1. Plaintiff moves for the Commissioner's decision to be vacated and remanded for further proceedings. See Dkt. No. 13. The Commissioner moves for the Commissioner's decision to be affirmed. See Dkt. No. 16. For the following reasons, it is recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

## I. Background

On November 9, 2020, plaintiff filed an application for Title II disability benefits and Title XVI supplemental security income benefits. See T. at 111, 291-94.[3] Plaintiff alleged a disability onset date of March 23, 2020. See id. at 79-81, 324. The Social Security Administration ("SSA") denied plaintiff's claims initially on April 27, 2021, and upon reconsideration on August 10, 2021. See id. at 154-54, 178-201. Plaintiff appealed and requested a hearing, see id. at 202-03, and a virtual hearing was held before Administrative Law Judge ("ALJ") Brian LeCours on January 14, 2022. See id. at 36-78. On February 3, 2022, the ALJ issued an unfavorable decision. See id. at 14-35. Plaintiff timely commenced this action on March 24, 2023. See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 7. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

3

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the

4

> [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. See id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff "me[t] the insured status requirements of the Social Security Act through December 31, 2024," and "ha[d] not engaged in substantial gainful activity since March 23, 2020, the alleged onset date[.]" T. at 19. At step two, the ALJ found that plaintiff "ha[d] the following severe impairments: degenerative joint disease, lumbar and cervical spine; degenerative joint disease, right shoulder and right knee; and obesity." Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination

5

of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 19-22.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds, she can occasionally reach overhead with her right upper extremity, and she can have no more than occasional exposure to pulmonary irritants such as fumes, odors, dust, and gases.

Id. at 22-23.  At step four, the ALJ determined that plaintiff was "capable of performing past relevant work as a driver[,]" which "does not require the performance of work-related activities precluded by [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965)."  See id. at 26.  At step five, the ALJ concluded that "[b]ased on the testimony of the vocational expert" and "considering [plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Id. at 28.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from March 23, 2020, through the date of this decision[.]"  Id.

## IV. Discussion

### A. The Parties' Arguments[4]

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF, located in the header of each page.

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  See Dkt. No. 13 at 11.  Specifically, plaintiff contends that "[t]he ALJ failed to properly consider the opinion of Ted J. Triana and he failed to adequately explain his analysis for rejecting the restrictions assessed by Dr. Triana."  Id. at 10.

The Commissioner argues that the ALJ "properly formulated the [RFC] describing [p]laintiff's capacity for work-related activities based on an evaluation of the medical and other evidence of record."  Dkt. No. 16 at 3.  Specifically, the Commissioner asserts that "[i]n crafting the RFC, the ALJ sufficiently considered the medical opinion evidence from Ted Triana, M.D., and articulated findings pursuant to the regulations."  Id.

### B. Analysis

On January 11, 2022, Dr. Triana submitted a medical source statement on plaintiff's behalf, which was based upon his treatment of plaintiff since February 2019.  See T. at 911.  Dr. Triana listed plaintiff's diagnoses as "[d]epression, [a]nxiety, [and c]hronic [b]ack [pain]," and his "prognosis" was "[g]uarded."  Id.  Dr. Triana opined that, as a result of plaintiff's impairments, she would be limited "in a competitive work situation" to "sit at one time" for two hours and to "stand at one time" for one hour, with a sit/stand option at will; to sit for less than two hours, and to stand/walk for about two hours, total in an eight-hour workday; to rarely lift and carry ten pounds and to never lift and carry more than twenty pounds; to rarely stoop/bend, or use her arms to reach (including overhead); and to never crouch/squat or climb ladders.  Id. at 911-12.  Dr. Triana also opined that plaintiff could occasionally lift and carry less than ten pounds; could occasionally twist, climb stairs, turn her head right or left, look up, hold her head in a static position, and use her hands to grasp, turn, and twist objects; and could

frequently look down and use her fingers for fine manipulations.  Id. at 912.  Dr. Triana noted that plaintiff does not "require the use [of] a cane or other assistive device," but would "sometimes need to take unscheduled breaks during an 8-hour workday," specifically ten-minute breaks every two hours.  Id. at 912-13.  Dr. Triana concluded that plaintiff would likely be off task more than 20% of the day due to her impairments and work-related limitations, and likely be absent more than four days per month.  See id. at 913.  Dr. Triana noted that "[s]tressful situations can trigger [her] anxiety," and plaintiff "has not responded well to treatment offered by [her o]rthopedist."  Id. at 913-14.

The ALJ was "partially persuaded by the opinion of treating provider Ted Triana, M.D.," and summarized Dr. Triana's findings.  T. at 26.  The ALJ noted that "Dr. Triana . . . overstated the limiting effects of [plaintiff's] impairments" because "his opinion is only somewhat supported by evidence cited of back pain and shoulder pain with minimal improvement with medications and is wholly inconsistent with [plaintiff's] normal strength and gait during treatment examinations."  Id.  However, the ALJ found that Dr. Triana's "opinion is nonetheless consistent with [plaintiff's] ability to ambulate unassisted during the relevant period."  Id.  The ALJ, thus, concluded that "Dr. Triana's opinion [was] partially persuasive, to the extent he found [plaintiff] does not require a cane for ambulation."  Id.

Plaintiff challenges the ALJ's evaluation of Dr. Triana's opinion, arguing that the ALJ did not "adequately address the factors of supportability and consistency" when considering Dr. Triana's opinion.  Dkt. No. 13 at 10-11.  The Commissioner asserts that the ALJ addressed "the question of supportability" by stating that Dr. Triana's "opinion was somewhat supported by the evidence he cited" and this "articulation was sufficient

8

to demonstrate that he considered Dr. Triana's explanations given in support of the opinion." Dkt. No. 16 at 10-11. The Commissioner further contends that "[t]he ALJ also adequately considered the consistency of Dr. Triana's opinion with evidence from other sources, observing that it was inconsistent with findings that [p]laintiff had normal muscle strength and gait during her treatment examinations." Id. at 11.

An ALJ "must consider all medical opinions and 'evaluate the[ir] persuasiveness' based on their supportability and consistency, the author's relationship with the claimant and specialization, and 'other factors.'" Cassandra G. v. Comm'r of Soc. Sec., 626 F. Supp. 3d 553, 564 (N.D.N.Y. 2022) (quoting 20 C.F.R. § 416.920c(a)-(c)); see also 20 C.F.R. § 404.1520c(a)-(c). "Although the ALJ is not required to assign a specific 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" Id. (quoting § 416.920c(a) and (b)(1)); see also 20 C.F.R. § 404.1520c(a), (b)(1). The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id.

9

§§ 404.1520c(c)(2), 416.920c(c)(2).  "A conclusory analysis of the [relevant] factors 'precludes the Court from undertaking meaningful review' of the ALJ's decision[; i]ndeed, '[c]ourts in this Circuit have remanded when the ALJ failed to address either supportability or consistency.'"  Annjeanette B. v. Kijakazi, No. 3:22-CV-198 (ATB), 2023 WL 3040663, at *8 (N.D.N.Y. Apr. 21, 2023) (citations omitted).

"Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] RFC determination while ignoring other evidence to the contrary."  Jackson v. Kijakazi, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) (collecting cases)).  "However, it is not the Court's function to reweigh the evidence that was before the ALJ."  Mary M. v. Comm'r of Soc. Sec., No. 8:20-CV-1594 (TWD), 2022 WL 823850, at *11 (N.D.N.Y. Mar. 17, 2022) (citing Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993)).  Nevertheless, "the ALJ is required to explain his reasoning to a sufficient degree such that the Court can, at the very least, glean his rationale in making the RFC determination."  Malia Ann B. v. Comm'r of Soc. Sec., No. 5:21-CV-1362 (AMN/CFH), 2023 WL 2838054, at *5 (N.D.N.Y. Feb. 23, 2023) (citing Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision[.]")), report and recommendation adopted, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023).

"District courts in the Second Circuit have reiterated . . . that an ALJ errs where he or she summarily concludes that an opinion is unsupported by treatment notes or inconsistent with the record."  Loni S. v. Comm'r of Soc. Sec., No. 3:22-CV-805 (CFH),

10

2023 WL 4195887, at *15 (N.D.N.Y. June 27, 2023) (citing Stephanie F. v. Kijakazi, No. 8:20-CV-1528 (BKS), 2022 WL 3355964, at *10 (N.D.N.Y. Aug. 15, 2022) ("[T]he ALJ's conclusory statement that [the provider's] conclusions 'are not consistent with the overall medical evidence' is not an adequate articulation of the consistency factor."), and Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) ("The ALJ's assessment of the supportability of [the] opinions is highly conclusory.  The ALJ offered only that '[one] opinion is supported by record review' and that '[the other] opinion is supported by examination.'  Such conclusory statements offer no insight into 'how well [either doctor] supported and explained their opinion,' and are insufficient to withstand review.")) (additional citation omitted).

      Here, the ALJ found Dr. Triana's opinion to be partially persuasive.  See T. at 26.  As for the supportability factor, the ALJ found Dr. Triana's opinion to be "only somewhat supported by evidence cited of back pain and shoulder pain with minimal improvement[.]"[5]  Id.; see Loni S., 2023 WL 4195887, at *14 ("The supportability factor requires an ALJ to ask whether a medical source provided supporting explanations for his or her opinion."); see also Julie M. v. Comm'r of Soc. Sec., No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) (finding that the ALJ adequately assessed the supportability factor where the ALJ noted "the lack of objective evidence supporting [the doctor's] opinion").  In so stating, the ALJ noted that Dr. Triana only

---

[5] The undersigned notes that Dr. Triana's medical opinion is a medical source statement consisting of check-boxes and brief blanks regarding plaintiff's symptoms and diagnoses.  See T. at 911-14.  "It is true that form reports are generally afforded less weight because they do not provide narrative explanations for the opined limitations."  Karen S. v. Comm'r of Soc. Sec., No. 3:20-CV-960 (CFH), 2022 WL 462086, at *7 (N.D.N.Y. Feb. 15, 2022) (citing Nikki L. v. Saul, No. 3:20-CV-934 (ATB), 2021 WL 4066530, at *5 (N.D.N.Y. Sept. 7, 2021) ("At the outset, the court agrees that [the check-box form] opinion lacked sufficient explanation supporting the restrictive limitations contained therein."), and Mix v. Astrue, No. 09-CV-0016 (MAT), 2010 WL 2545775, at *5 (W.D.N.Y. June 18, 2010) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")).

11

provided a "somewhat" supporting explanation for his opinion and, therefore, the ALJ assessed what Dr. Triana "used to support [his] opinion[ ] and reach [his] ultimate conclusion."  Brianne S. v. Comm'r of Soc. Sec., No. 19-CV-1718-FPG, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (concluding that the ALJ failed to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions.") (internal quotations and citations omitted); cf. Cheryl A. L. v. Comm'r of Soc. Sec. Admin., No. 5:23-CV-151 (AMN/TWD), 2024 WL 1073442, at *9 (N.D.N.Y. Feb. 5, 2024) (finding that the ALJ appropriately considered the supportability factor where the ALJ expressed stated that the doctor's opinion was "supported by a detailed narrative rationale [that] cite[s] supporting objective medical evidence"), report and recommendation adopted sub nom. Cheryl A. L. v. O'Malley, 2024 WL 862163 (N.D.N.Y. Feb. 29, 2024).  Thus, contrary to plaintiff's contentions, the ALJ's articulation is sufficient to demonstrate that he considered the supportability of Dr. Triana's opinion.  See Tara M. B. v. Comm'r of Soc. Sec., No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023) (determining that the supportability factor was met where the ALJ stated that the doctor's opinion was only "somewhat supported by [his] examination report," as the degree of some limitations recommended were not supported by the doctor's own objective findings), report and recommendation adopted sub nom. Tara B. v. Comm'r of Soc. Sec., 2023 WL 7281138 (N.D.N.Y. Nov. 3, 2023);  cf. Glenn G. v. Kijakazi, No. 3:22-CV-824 (RMS), 2023 WL 2477501, at *13 (D. Conn. Mar. 13, 2023) ("Nowhere does the ALJ mention the supportability factor, and . . . the Court cannot adequately

glean how the ALJ weighed the supportability factor.") (internal quotation marks and citations omitted).

As for the consistency factor, the ALJ found that Dr. Triana's opinion was "wholly inconsistent with [plaintiff's] normal strength and gait during treatment examinations," but was "consistent with [plaintiff's] ability to ambulate unassisted during the relevant period."  T. at 26; see Rua-Campusano v. Kijakazi, No. 20-CV-7087 (GBD/SLC), 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."), report and recommendation adopted, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022).  Although the ALJ did not expressly cite to other medical evidence in this paragraph, "[t]he ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlights the evidence upon which the ALJ rendered this consistency assessment."  Julie M., 2024 WL 664413, at *11 (citing Disotell v. Comm'r of Soc. Sec., No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *7 (N.D.N.Y. Aug. 14, 2017) (concluding that the ALJ provided "ample rationale" to support her determination that a medical opinion was inconsistent with medical evidence in the record where, "elsewhere in her decision[,] the ALJ outlined specific [treatment notes] and other objective medical evidence" which was inconsistent with the restrictive limitations opined), and Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered")).

Specifically, the ALJ previously discussed, at length, plaintiff's treatment and consultative examinations where plaintiff appeared to exhibit normal strength and gait and was able to ambulate unassisted. See T. at 24; cf. Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *8 (N.D.N.Y. May 24, 2021) ("[T]he ALJ's fleeting discussion of Dr. Magurno's opinion falls short of satisfying the articulation requirements contained in the new regulations, especially considering the ALJ's failure to discuss the extent to which Dr. Magurno's opinion was consistent with the other evidence of record, medical or otherwise[.]"). For example, "[i]n February 2021, [plaintiff] underwent a general physical examination with her treating provider, [where] she exhibited normal gait and full strength in her upper and lower extremities[.]" T. at 24 (citing T. at 728-30). "In March 2021, [plaintiff] complained of lower back pain and exhibited mild spinal tenderness, but she exhibited normal gait." Id. (citing T. at 605). "In April 2021, [plaintiff] underwent a consultative examination . . . [and] she exhibited normal gait and stance, without the use of any assistive device." Id. at 25 (citing T. at 541). "In July 2021, she exhibited mild swelling on examination, . . . but she had full cervical spine range of motion and full upper extremity strength." Id. at 24 (citing T. at 578-79, 593). Thus, by referencing plaintiff's "normal strength and gait during treatment examinations," the ALJ adequately addressed the consistency of Dr. Triana's opinion. T. at 26; see Shari L. v. Kijakazi, No. 8:20-CV-1266 (ATB), 2022 WL 561563, at *7 (N.D.N.Y. Feb. 24, 2022) (finding that the ALJ sufficiently addressed the consistency factor because "the ALJ specifically identified other record evidence with which the [opinion was] consistent, including [the] plaintiff's . . . ability to ambulate without the use of an assistive device, and the lack of restrictive lumbar range of motion examinations

throughout the record"); see also Danielle S. v. Comm'r of Soc. Sec., No. 1:20-CV-1013 (DB), 2021 WL 2227913, at *5 (W.D.N.Y. June 2, 2021) (concluding that the ALJ adequately addressed the consistency of a medical opinion by explaining the opinion was inconsistent with treatment notes stating that plaintiff was neurologically intact and had a normal gait).

Accordingly, the ALJ "properly evaluated the supportability and consistency of [Dr. Triana's] opinion with respect to" plaintiff's exertional and postural limitations. Tawredou v. Kijakazi, No. 20-CV-10253 (JLC), 2022 WL 3037264, at *11 (S.D.N.Y. Aug. 2, 2022).  Therefore, the ALJ did not err in his assessment of Dr. Triana's opinion, which was only somewhat supported by evidence cited "of back and shoulder pain with minimal improvement with medications," and partially inconsistent with other parts of the record addressing plaintiff's strength and gait.  T. at 26; see Ashley E. v. Comm'r of Soc. Sec., No. 6:22-CV-299 (GTS/CFH), 2023 WL 6217792, at *19 (N.D.N.Y. Aug. 21, 2023) ("The undersigned also finds no legal error in the ALJ's discussion of the medical opinions[, as] ALJ Romeo reviewed the medical opinions in the record and discussed their consistency or inconsistency with each other, whether they were supported by any substantive explanations, and their consistency with the medical evidence."), report and recommendation adopted, 2023 WL 6215829 (N.D.N.Y. Sept. 25, 2023); see also Tamara N. W. v. Comm'r of Soc. Sec., No. 1:20-CV-1696 (WBC), 2022 WL 7087230, at *4 (W.D.N.Y. Oct. 12, 2022) ("Although brief, the ALJ's explanation and written decision allow the Court to trace the path of his reasoning for not adopting the doctor's finding.") (internal quotation marks and citations omitted); cf. Jaleesa H. v. Comm'r of Soc. Sec., No. 1:20-CV-01180 (EAW), 2022 WL 174337, at *5 (W.D.N.Y. Jan. 18, 2022)

(remanding where "the ALJ did not explain anything—instead, he made a conclusory statement that [an] opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations.").

"Because he explicitly considered both the consistency and supportability of Dr. [Triana's] opinion, the ALJ did not fail to properly evaluate the opinion as required by the . . . regulations in making his findings." Tawredou, 2022 WL 3037264, at *11. Thus, the ALJ properly rejected some of the limitations assessed by Dr. Triana in formulating the RFC determination.[6] See Sara W. v. Comm'r of Soc. Sec., No. CV 23-869 (RMB), 2024 WL 658047, at *7 (D.N.J. Feb. 16, 2024) (concluding that, although the plaintiff argued that the ALJ improperly rejected limitations in a medical opinion, the ALJ sufficiently addressed the supportability and consistency of that opinion and, thus, remand was not warranted). "Therefore, the ALJ made no legal error, and remand is not warranted." Tawredou, 2022 WL 3037264, at *11. Accordingly, it is recommended that plaintiff's motion be denied, and the Commissioner's decision be affirmed.

---

[6] To the extent plaintiff contends that substantial evidence does not exist for the ALJ's RFC determination, she ignores the ALJ's express consideration of (1) plaintiff's physical examinations, where plaintiff "consistently exhibited normal gait and full upper extremity strength"; (2) plaintiff's consultative examination with Dr. Lorensen, who found plaintiff "had no gross limitations for sitting, standing, walking, or using her hands" and "had full strength and normal gait; and (3) the opinion of the State agency medical consultants, who found plaintiff capable of light work and cited evidence of normal gait and strength during examinations.  T. at 25-26; see Dkt. No. 13 at 11; see also Tawredou, 2022 WL 3037264, at *11 n. 7.  "Ultimately, it is the claimant's burden to demonstrate the limitations in the RFC," and plaintiff has not done so here.  Gutierrez v. Comm'r of Soc. Sec., No. 20-CV-10233 (KHP), 2022 WL 2116718, at *9 (S.D.N.Y. June 13, 2022) (citing Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)); see also Whitmore v. Kijakazi, No. 20-CV-08435 (SN), 2022 WL 976964, at *11 (S.D.N.Y. Mar. 31, 2022) ("Although [the plaintiff] contends that the entirety of the record supports a finding that he was incapable of performing sedentary work, he fails to cite to any specific evidence that supports his contention.  This fact alone could constitute substantial evidence supporting a denial of benefits.") (citation omitted).

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that the plaintiff's motion (Dkt. No. 13) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.

Date: June 25, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge